THOMAS, Judge.
The following facts appear in the pleadings and motions contained in the record on appeal. James Thomas Hensley (“the father”) and Danna Kanizai (“the mother”) were divorced by the Lauderdale Circuit Court (“the circuit court”) on October 11, 2011. Two children were born of their marriage, A.H. and J.H.; whether the mother’s oldest child, R.H., is the father’s biological child or was adopted by the father is in dispute. The parties’ divorce judgment is not a part of the record on appeal; however, the father’s petition for modification of the divorce judgment alleges that the divorce judgment incorporated the parties’ settlement agreement, which did not reference R.H., A.H., or J.H. (sometimes collectively referred to as “the children”). A judgment of the Lauderdale Juvenile Court (“the juvenile court”) contained in the record confirms that the divorce judgment failed to address the custody of the children.
On July 6, 2012, the father filed a petition seeking a protection-fi-om-abuse (“PFA”) order in the circuit court; that petition is not contained in the record on appeal. However, in that petition, which was assigned case number DR-12-391, the father alleged that the mother had endangered the children; he sought temporary custody of the children. The circuit court awarded ex parte custody of the children to the father on the same day that he filed his petition. After a trial held on July 30, 2012, the circuit court awarded the father temporary custody of the children in a PFA order, which is not contained in the record on appeal. Only A.H. and J.H. were in the father’s physical custody on July 30, 2012; R.H. remained in Tennessee, where all three of the children had been living with Dennis Kanizai (“the maternal grandfather”) and Vanessa Kanizai (hereinafter referred to collectively as “the maternal grandparents”).
At some point before July 19, 2012, the maternal grandfather filed emergency petitions assigned case numbers JU-12-276.01, JU-12-277.01, and JU-12-279.01 in the juvenile court. The record does not contain the petitions, but the record indicates that the maternal grandfather sought custody of the children in those petitions. The record on appeal contains a copy of a judgment dated July 19, 2012, in which the juvenile court dismissed the juvenile-court actions.
On July 30, 2012, the father filed a petition in the circuit court seeking to amend the divorce judgment and seeking an order holding the mother in contempt for alleged violations of the PFA order. That action was assigned case number DR-11-532.01. In his petition, the father alleged that the mother abused drugs and had failed to supervise the children. He requested legal and physical custody of the children and further requested, among other things, an order requiring the mother to pay child support. The mother answered the father’s petition, denying the father’s allegations; she filed no other pleadings or motions.
The maternal grandparents filed a verified motion to intervene in case number DR-11-532.01 on August 6, 2012. In their verified motion to intervene, they sought an award of custody and alleged that the children were dependent.[1] They further *189 stated that the father had physically and mentally abused the children and that the mother “had a history of drug and alcohol abuse, and recently ha[d] engaged in neglectful, volatile[,] and dangerous behavior that pose[d] a serious risk of harm to [the children].” According to other statements in the maternal grandparents’ verified motion to intervene, the children had begun living with the maternal grandparents in Tennessee in October 2010.[2] The maternal grandparents requested an award of “immediate temporary custody” of the children and the appointment of a guardian ad litem for the children. On August 11, 2012, the circuit court granted the maternal grandparents’ motion to intervene and appointed a guardian ad litem for the children. The circuit court also set a hearing for August 27, 2012.
On August 15, 2012, the maternal grandparents filed a motion seeking a determination whether Alabama had jurisdiction over the father’s action under the Uniform Child Custody Jurisdiction and Enforcement Act (“the UCCJEA”), codified at Ala. Code 1975, § 30-BB-101 et seq. The maternal grandparents alleged that the children had resided in Tennessee from October 2010 until July 2012, when two of the children relocated to Alabama pursuant to the circuit court’s PFA order. Thus, the maternal grandparents argued, the home state of the children at the time of the commencement of the father’s action was Tennessee. See Ala.Code 1975, §§ 30-3B-102(7) (defining “home state” as “[t]he state in which a child lived with a parent or a person acting as a parent at least six consecutive months immediately before the commencement of a child custody proceeding”), and 30-3B-201(a)(l) (providing that an Alabama court has jurisdiction to make a child-custody determination if it is the home state of the child at the time of the commencement of a child-custody proceeding). The maternal grandparents further alleged that they had filed a petition seeking emergency temporary custody of the children in Hardin County, Tennessee. Relying on § 30-3B-206(b) — which provides that when a simultaneous child-custody proceeding is pending in another state having jurisdiction pursuant to its version of the UCCJEA, a court entertaining a child-custody proceeding must stay the proceeding and communicate with the court of that other state — the maternal grandparents requested that the circuit court confer with the Tennessee court regarding its jurisdiction.
*190 The father filed a brief in response to the maternal grandparents’ motion to determine jurisdiction; in his brief, the father requested that the circuit court retain jurisdiction of the action. He conceded that the Tennessee court had awarded emergency custody of R.H. to the maternal grandparents, but he reported that the Tennessee court had “elected to stay further proceedings [regarding A.H. and J.H.] until [the] Hardin County Court[] confer[red] with the Lauderdale County Court in Alabama.”[3] The father argued that the circuit court had acquired temporary emergency jurisdiction over A.H. and J.H. under Ala.Code 1975, § 30-3B-204, based on its entry of the PFA order[4] and its continuing jurisdiction under the Parental Kidnapping Prevention Act (“the PKPA”).[5] According to the father, Alabama was the home state of A.H. and J.H., because, he alleged, A.H. and J.H. had lived exclusively in Alabama since June 23, 2012, and had lived an equal amount of time in Alabama and Tennessee before June 23, 2012. He asserted that before June 23, 2012, A.H. and J.H. had “spent half the week with the father and the other half with the maternal grandparents.” Specifically, he contended that A.H. and J.H. had spent Monday to Friday evening with the maternal grandparents in Tennessee and Friday evening to Monday morning with him in Alabama. Finally, the father asserted that the maternal grandparents had acquiesced to the circuit court’s jurisdiction by appearing and intervening in the circuit-court action to seek custody of the children and by being present at the PFA hearing.[6]
The maternal grandparents filed a responsive brief explaining the legal basis underlying their request that the circuit court transfer jurisdiction of the action to Tennessee. In that brief, the maternal grandparents alleged that, at the time the divorce judgment was entered, the children resided with them in Tennessee. Thus, according to the maternal grandparents, the children had resided “predominantly” in Tennessee for “approximately two years” and, they further argued, visits with the father in Alabama did not alter that conclusion. See § 30-3B-102(7) (stating that “[a] period of temporary absence *191 of the child ... is part of the [six-month] period” used to determine the home state of a child). Based on that argument, they contended in the circuit court that Tennessee is the home state of the children. Although they conceded that the circuit court had exercised temporary emergency jurisdiction over the children’s custody in the PFA action under § 30-3B-204(b), they argued that only the Tennessee court could exercise jurisdiction under the UC-CJEA to enter a final child-custody determination. The maternal grandparents later filed a motion to dismiss the father’s action, to which they attached some documents that, they claimed, established that the children had attended school in Tennessee for the past two years; however, those documents did not include any information establishing the name of the school the children attended or the location at which the children attended school.
On January 24, 2013, the circuit court entered an order granting the maternal grandparents’ motion and dismissing the action without including any findings of fact or legal conclusions to support its determination that it lacked subject-matter jurisdiction under the UCCJEA. The circuit court stated in its order that it had considered only arguments of counsel and the motions and briefs the parties had filed in ruling on the maternal grandparents’ motion. The father filed a motion to alter, amend, or vacate the judgment and requested a hearing, again arguing that the circuit court had acquired jurisdiction under the UCCJEA. The circuit court denied the father’s postjudgment motion on February 28, 2013. The father timely appealed. On appeal, the father raises three issues.[7] He first challenges the circuit court’s dismissal of his petition to amend the divorce judgment based on the conclusion that it lacked subject-matter jurisdiction under the UCCJEA. Secondly, the father argues that the circuit court erred by failing to communicate with the Tennessee court under §§ 30-3B-204(d), 30-3B-206(b), and 30-3B-110. Finally, the father argues that the circuit court erred by failing to set a date for the duration of a temporary-custody order as required by § 30-3B-204(c) and by failing to specify the grounds upon which it based its decision to dismiss his action.
The UCCJEA provides the framework for the determination of which state may enter a child-custody determination regarding a child. Section 30-3B-201 provides:
“(a) Except as otherwise provided in Section 30-3B-204, a court of this state has jurisdiction to make an initial child custody determination only if:
“(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
“(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is *192 the more appropriate forum under Section 30-3B-207 or 30-3B-208, and:
“a. The child and the child’s parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
“b. Substantial evidence is available in this state concerning the child’s care, protection, training, and personal relationships;
“(8) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 30-3B-207 or 30-3B-208; or
“(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3).
“(b) Subsection (a) is the exclusive jurisdictional basis for making a child custody determination by a court of this state.
“(c) Physical presence of a child is not necessary or sufficient to make a child custody determination.”
The UCCJEA defines “home state” in § 30-3B-102(7), which reads in its entirety:
“The state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of the child or any of the mentioned persons is part of the period.”
Section 30-3B-204 governs temporary emergency jurisdiction. That section reads:
“(a) A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.
“(b) If there is no previous child custody determination that is entitled to be enforced under this chapter and a child custody proceeding has not been commenced in a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.
“(c) If there is a previous child custody determination that is entitled to be enforced under this chapter, or a child custody proceeding has been commenced in a court • of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under Sections 30-3B-201 through 30-3B-203. The order issued in this state remains in effect until an order is ob *193 tained from the other state within the period specified or the period expires.
“(d) A court of this state which has been asked to make a child custody determination under this section, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of a state having jurisdiction under Sections 30-3B-201 through 30-3B-203, shall immediately communicate with the other court. A court of this state which is exercising jurisdiction pursuant to Sections 30-3B-201 through 30-3B-203, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of another state under a statute similar to this section shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order.”
The record contains only pleadings, motions, briefs, and a few documentary exhibits (a judgment of the juvenile court and documents purporting to be school-attendance records). The circuit court did not hold an evidentiary hearing; instead, the circuit court heard only arguments of counsel and considered the various motions and briefs filed by the father and the maternal grandparents, most of which are not evidence. Fountain Fin., Inc. v. Hines, 788 So.2d 155,159 (Ala.2000) (quoting other cases for the propositions that “ ‘[mjotions and arguments of counsel are not evidence’ ” and that “ ‘[sjtatements in motions are not evidence and are therefore not entitled to evidentiary weight.’ ”). However, the maternal grandparents’ motion to intervene was verified; a “[vjerified pleading[ ] constitute[s][an] affidavit ] and [is] treated as evidence.” Mead v. State, 449 So.2d 1279, 1280 (Ala.Crim.App.1984).
In his initial argument on appeal, the father argues, without citation to authority, that the circuit court has subject-matter jurisdiction under the UCCJEA because the children were born in Alabama and the parents continue to reside in Alabama and because, although it divorced the parties without addressing the custody of their children, the circuit court could have adjudicated child custody at the time of the divorce. This contention is wholly without merit. The circuit court has jurisdiction over an initial child-custody proceeding only if one of the bases for jurisdiction under § 30-3B-201(a) is satisfied, see § 30-3B-201(b), or if the requirements for temporary emergency jurisdiction under § 30-3B-204 are met. None of the facts the father relies on provides a basis for determining jurisdiction under the UC-CJEA in the present case. Instead, the evidence before the circuit court indicated that the children’s home state at the time of the commencement of the father’s action was Tennessee, because they had lived there with the maternal grandparents for at least six months before the father commenced his action seeking to amend the divorce judgment to address the custody of the children.[8]
*194 The father next contends that the circuit court had temporary emergency jurisdiction over his petition to amend the divorce judgment under § 30-3B-204. However, the father has consistently asserted that the PFA order was entered under the temporary emergency jurisdiction provided in § 30-3B-204. We agree that the circuit court had jurisdiction over the child-custody determination in the PFA action under § 30-3B-204(a), because the children were present in this state and the allegations of the PFA petition raised an emergency need to protect the children from being exposed to a dangerous animal.[9]
However, we find no support for the father’s argument that the circuit court was operating under § 30-3B-204 at the time it considered the father’s petition to amend the divorce judgment to address custody of the children. Temporary emergency jurisdiction is, by its nature, temporary, is designed to address custody in situations in which a child has been abandoned or is in need of emergency protection, and is limited in duration as provided in § 30-3B-204(b) and (c). Section 30-3B-204(b) provides that, when no other custody proceeding is pending (and when no previous determination has been made), an order entered under the court’s temporary emergency jurisdiction remains in effect until an order is obtained from a court having jurisdiction under the UCCJEA. Because no proceeding was pending in Tennessee at the time the PFA order was entered, the PFA order would remain in effect until a court that had nonemergency jurisdiction over a child-custody determination regarding the children entered an order (or until the PFA order expired). § 30-3B-204(b). The emergency that the father sought to address in the PFA action had been resolved by the order granting him temporary custody, and, thus, no emergency existed at the time of the commencement of the father’s action to amend the divorce judgment upon which to base temporary emergency jurisdiction under § 30-3B-204(a).
The father further asserts that the PFA order is the initial custody determination regarding the children. The father is arguing that, once the circuit court exercised jurisdiction to make a child-custody determination in the PFA action, it would then maintain continuing jurisdiction over the children’s custody under the PKPA, § 1738A(d), because the father, a “contestant” under the PKPA, still resides in this state. We explained the interplay between the PKPA and the UCCJEA in Patrick v. Williams, 952 So.2d 1131, 1138 (Ala.Civ.App.2006):
“ ‘The Parental Kidnapping Prevention Act (“PKPA”), 28 U.S.C. § 1738A, and Alabama’s version of the Uniform Child Custody Jurisdiction and Enforcement Act (“UCCJEA”), codified at Ala.Code 1975, § 30-3B-101 et seq., govern when a state has *195 jurisdiction to decide a child-custody issue. The PKPA states that continuing jurisdiction remains in a state that has made a child-custody determination provided that the state continues to have jurisdiction under the state’s laws and the child or at least one “contestant” resides in that state. 28 U.S.C. § 1738A(d); see also Holloway v. Holloway, 519 So.2d 531, 532 (Ala.Civ.App.1987).’ ”
“M.J.P. v. K.H., 923 So.2d 1114, 1116 (Ala.Civ.App.2005). The Parental Kidnapping Prevention Act (‘PKPA’) defines a ‘contestant’ as ‘a person, including a parent or grandparent, who claims a right to custody or visitation of a child.’ 28 U.S.C. § 1738A(b)(2).
“Under the PKPA, the trial court retained continuing jurisdiction to modify the children’s custody so long as it retained jurisdiction under the laws of Alabama and at least one of the contestants continued to live in Alabama. 28 U.S.C. § 1738A(d). The maternal grandmother has lived in Tallapoosa County at all times relevant to this appeal, and she meets the criteria outlined in the PKPA to be a ‘contestant’ because she is a person claiming a right to custody of the children. See 28 U.S.C. § 1738A(b)(2). Therefore, our analysis next turns to whether the trial court could, under Alabama’s version of the Uniform Child Custody Jurisdiction and Enforcement Act (‘the UCCJEA’), exercise continuing jurisdiction to modify the children’s custody. 28 U.S.C. § 1738A(d).
“In order to exercise continuing jurisdiction over the matter, the trial court must have had jurisdiction to make an initial custody determination.”
What the father misunderstands is that the circuit court’s proper exercise of temporary emergency jurisdiction does not equate to its having acquired jurisdiction to make an initial child-custody determination under § 30-3B-201(a). Continuing jurisdiction under the PKPA does not exist if the state does not have jurisdiction under its version of the UCCJEA. The circuit court was exercising temporary emergency jurisdiction under § 30-3B-204(b) when it made the child-custody determination in the PFA action. A child-custody determination entered during the exercise of temporary emergency jurisdiction typically continues in effect only until a court that may properly exercise nonemergency jurisdiction over a child-custody determination regarding the children enters an order. See § 30-3B-204(b) & (c). Only in rare instances, such as when a child-custody proceeding is not commenced in a state having jurisdiction under §§ 30-3B-201, 30-3B-202, or 30-3B-203, does a child-custody determination entered under § 30-3B-204 have the possibility of becoming a final child-custody determination, and, even then, only if the state becomes the home state of the child and if the order provides that it may become a final child-custody determination. § 30-3B-204(b).
In the present case, the maternal grandparents have initiated an action in the state having jurisdiction under § 30-3B-201(a)(1), i.e., Tennessee, and the PFA order entered by the circuit court will expire upon entry of a child-custody determination by the Tennessee court. The exercise of temporary emergency jurisdiction “is extremely limited, allowing the court to make only such temporary orders as are necessary ‘to protect the child until the state that has jurisdiction under [Ala.Code 1975, §§ 30-3B-201 through 30-3B-203] enters an order.’” M.B.L. v. G.G.L., 1 So.3d 1048, 1051 (Ala.Civ.App.2008) (quoting § 30-3B-204, Official Comment). Therefore, the circuit court’s PFA order entered pursuant to its exercise of temporary emergency jurisdiction under § 30- *196 3B-204(b) is not an initial child-custody determination and cannot serve as a means by which the circuit court could acquire jurisdiction it does not otherwise have under the UCCJEA.
The father further argues that the circuit court is a more convenient forum under § 30-3B-207. Section 30-3B-207 permits a court having jurisdiction under the UCCJEA to decline to exercise that jurisdiction “if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum.” § 30-3B-207(a). However, the statute does not permit a state not having jurisdiction under the UCCJEA to determine that it would be a more convenient forum than a state having jurisdiction under the UCCJEA. That is, the circuit court could not have secured jurisdiction over the father’s action by determining that it would be a more convenient forum than Tennessee.
In the father’s second issue on appeal, he argues that the circuit court erred by failing to communicate with the Tennessee court under § 30-3B-204(d), § 30-3B-206(b), and § 30-3B-110. Section 30-3B-204(d) requires communication between courts. However, as we have explained, by the time the father commenced his action seeking to amend the divorce judgment the emergency was over, the issue having been resolved by the entry of the PFA order under § 30-3B-204(b). The circuit court could not have acquired temporary emergency jurisdiction over the father’s petition to amend the divorce judgment under § 30-3B-204, so the circuit court had no duty to communicate with the Tennessee court under § 30-3B-204(d).
The father’s argument based on § 30-3B-206(b) and § 30-3B-110, although stronger, is also unavailing. Section § 30-3B-206(b) states:
“(b) Except as otherwise provided in Section 30-3B-204, a court of this state, before hearing a child custody proceeding, shall examine the court documents and other information supplied by the parties pursuant to Section 30-3B-209. If the court determines that a child custody proceeding has been commenced in a court in another state having jurisdiction substantially in accordance with this chapter, the court of this state shall stay its proceeding and communicate with the court of the other state. If the court of the state having jurisdiction substantially in accordance with this chapter does not determine that the court of this state is a more appropriate forum, the court of this state shall dismiss the proceeding.”
The father argues that, once it learned of the Tennessee action, the circuit court was required to communicate with the Tennessee court under § 30-3B-206(b). The father also contends that the circuit court was required, under § 30-3B-110(d), to make a record of that communication and to make that record available to him. Further, he complains that the circuit court erred in failing to allow him to present facts in the form of testimony, as permitted by'§ 30-3B-110(b), which states that “[t]he court may allow the parties to participate in the communication [between courts]. If the parties are not able to participate in the communication, they must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made.”
Certainly, the circuit court is required to base its jurisdictional determination on evidence presented by the parties. The Official Comment to § 30-3B-110, however, provides that the presentation of facts and legal argument “may be done through a hearing or, if appropriate, by affidavit or memorandum.” As noted above, the parties extensively briefed the legal issue, and *197 the maternal grandparents presented a verified motion containing facts pertaining to jurisdiction. The father presented no verified pleading or motion, no affidavit, and no other evidence, and he never specifically requested an evidentiary hearing before the circuit court entered its order dismissing his action.[10]
Furthermore, although § 30-3B-206(b) requires a court of this state to stay its proceeding and communicate with the court of the state in which a child-custody proceeding concerning the same child or children is pending, we need not reverse a trial court’s judgment for failing to communicate if any error that might have occurred is harmless error under Rule 45, Ala. R.App. P. See Ramsey v. Ramsey, 995 So.2d 881, 888 (Ala.Civ.App.2008). The circuit court determined that it lacked jurisdiction over the father’s action based on the evidence and legal arguments presented to it. That evidence, which was contained in the verified motion to intervene, proved that the children had lived with the maternal grandparents since October 2010. According to the allegations in the motion, the father did not provide financial support to the children and rarely visited with the children while they were living with the maternal grandparents. The father did not dispute that the children had been living at least part-time with the maternal grandparents since the entry of the parents’ divorce judgment in October 2011, although he did allege that the children were in his custody on the weekends. However, the father provided no contradictory evidence via affidavit or testimony.
The circuit court had before it uncontra-dicted evidence from which it could have concluded that the children had been in the physical custody of the maternal grandparents for at least six months before the commencement of the father’s action and that Tennessee was the children’s home state. Any communication with the Tennessee court would not likely have impacted the circuit court’s conclusion that it lacked subject-matter jurisdiction because the children had been living with the maternal grandparents in Tennessee for over six months at the time the father commenced his action seeking to amend the divorce judgment. Ramsey, 995 So.2d at 888. Therefore, because the circuit court had before it evidence indicating that the children had been living in Tennessee for more than six months preceding the commencement of the father’s action, we cannot conclude that the circuit court erred by failing to communicate with the Tennessee court and by failing to hold an evidentiary hearing, which the father did not specifically request before the circuit court entered its order dismissing the action.
The father’s final arguments are that the circuit court erred by failing to set the duration of a temporary-custody order under § 30-3B-204(c) and by not addressing jurisdiction or specifying the grounds upon which it based its dismissal. Because the circuit court’s order in this action determined that it lacked subject-matter jurisdiction to make a child-custody determination, § 30-3B-204(c), which governs orders issued by a court exercising temporary emergency jurisdiction, is not applicable. To the extent the father argues that the circuit court was required to state its factual determinations and legal conclusions in its order, we reject his argument. No provision in the UCCJEA required the circuit court to make written findings or conclusions in an order entered under its provisions.
In conclusion, we reject the father’s arguments that the circuit court had temporary emergency jurisdiction over his action *198 seeking to amend the divorce judgment and ■ that the circuit court’s PFA order, entered pursuant to its temporary emergency jurisdiction under § 30-3B-204(b), was an initial child-custody determination upon which to base continuing jurisdiction in the circuit court. Further, we conclude that the circuit court did not commit reversible error by failing to communicate with the Tennessee court. Finally we reject the father’s contentions that the circuit court erred by failing to set the duration of a temporary-custody order and by failing to make written findings or conclusions in its order dismissing the father’s action. Accordingly, we affirm the judgment of the circuit court dismissing the father’s action seeking to amend his divorce judgment to address the custody of the children.
AFFIRMED.
THOMPSON, P.J., and PITTMAN and DONALDSON, JJ., concur.
MOORE, J., concurs in the result, without writing.

. We note that the circuit court has no jurisdiction to consider a dependency petition. See Ala.Code 1975, § 12-15-114(a) (providing that the juvenile court has exclusive original *189 jurisdiction over proceedings in which a child is alleged to be dependent). However, the maternal grandparents could properly intervene in the divorce action to seek custody based on allegations that the parents were unfit to have custody of the children. See Ex parte Terry, 494 So.2d 628 (Ala.1986). The factual allegations in the maternal grandparents’ verified motion to intervene are sufficient allegations of unfitness that, if proven, would overcome the parents' prima facie right to custody of the children.

. We note that the maternal grandparents stated in the verified motion to intervene that the children began living with them in Tennessee in October 2010; however, in their motion for a determination of jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("the UCCJEA"), codified at Ala.Code 1975, § 30-3B-101 et seq., which was not verified, the maternal grandparents stated that the children began living with them in October 2011. In their verified motion to intervene and in their trial brief, the maternal grandparents indicated that the children had been living with them for 21 months and for almost 2 years, respectively, suggesting that the October 2010 date is the correct date. The difference in the dates is of no real consequence, however, because, as discussed infra, the UCCJEA bases the determination of a child’s home state on where the child has lived for the six months immediately preceding the commencement of an action seeking a child-custody determination. See Ala.Code 1975, § 30-3B-201(7).

. The record does not reflect that the Tennessee court communicated with the circuit court. Section 30-3B-110 governs communication between courts considering jurisdictional issues or simultaneous proceedings under the UCCJEA. Although § 30-3B-110(b) states that communication between courts regarding schedules, calendars, or court records need not be recorded or disclosed to the parties, § 30-3B-110(c) requires that all other communication between courts be recorded.

. The PFA order was a child-custody determination. Ala.Code 1975, § 30-3B-102(3). Section 30-3B-102(4) expressly includes within the definition of "child custody proceeding” a "proceeding for ... protection from domestic violence, in which the issue [of child custody] may appear.” Thus, the PFA action, in which the issue of child custody was litigated, was a child-custody proceeding as defined by the UCCJEA, and the resulting PFA order was a child-custody determination, which is defined as an order "providing for the legal custody, physical custody, or visitation with respect to a child.” Ala.Code 1975 § 30-3B-102(3).

. See 28 U.S.C. § 1738A(d) (jurisdiction of a court of a state that has made a child-custody determination continues as long as that court has jurisdiction under the laws of the state and the state remains the residence of the child or of any contestant).

. The father's acquiescence argument is unavailing. "jurisdiction to make a child custody determination [under the UCCJEA] is subject matter jurisdiction,” and "an agreement of the parties to confer jurisdiction on a court that would not otherwise have jurisdiction under [the UCCJEA] is ineffective.” Ala.Code 1975, § 30-3B-201, Official Comment.

. The father raises no arguments pertaining to the circuit court's dismissal of his petition insofar as it alleged that the mother was in contempt of the PFA order. When a party fails to argue an issue in his or her appellate brief, that issue is deemed waived. See Boshell v. Keith, 418 So.2d 89, 92 (Ala.1982) ("When an appellant fails to argue an issue in its brief, that issue is waived.”). Because the father raises no argument pertinent to the mother, we have removed her as a named appellee.

. The father has not challenged the maternal grandparents’ status as “person[s] acting as a parent” under § 30-3B-102(13). Under the UCCJEA a "person acting as a parent" is:
"A person, other than a parent, who:
"a. Has physical custody of the child or has had physical custody for a period of six consecutive months, including any temporary absence, within one year immediately before the commencement of a child custody proceeding; and “b. Has been awarded legal custody by a court or claims a right to legal custody under the law of this state.”
§ 30-3B-102(13). "Physical custody” is defined as "[t]he physical care and supervision *194 of a child.” § 30-3B-102(14). This court has determined that a grandparent who had physical custody of a child and who was seeking legal custody of that child qualified as a person acting as a parent under § 30-3B-102(13). Patrick v. Williams, 952 So.2d 1131, 1139 (Ala.Civ.App.2006). The maternal grandparents, like the grandparent in Patrick, had physical custody of the children for at least six months of the year preceding the filing of the father’s petition to amend the divorce judgment and have been actively seeking legal custody of the children. Therefore, each of the maternal grandparents is a person acting as a parent under § 30-3B-102(13). Patrick, 952 So.2d at 1139.

. The verified motion to intervene stated that the allegations in the PFA petition included an allegation that “the mother allowed the children to be around a dangerous animal, and one of the children was injured.”

). The first time that the father requested an evidentiary hearing on the subject-matter-jurisdiction issue was in his postjudgment motion.